UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RODNEY ROSS                              CIVIL ACTION NO. 09-cv-1964

VERSUS                                   JUDGE HICKS

WARDEN, LOUISIANA STATE                  MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

### Introduction

Rodney L. Ross ("Petitioner") got in an argument with Jackie Ray Morris, after which

Petitioner shot Morris twice in the back with a 9 mm pistol. Morris died from the wounds.

A Caddo Parish jury convicted Petitioner of second degree murder.  Petitioner argued on

appeal that the evidence, although it might support the lesser crime of manslaughter, was not

sufficient to support second degree murder.  Petitioner also challenged the State's admission

into evidence of two rifles that were found in the house where he was arrested.  The state

courts affirmed the conviction.  State v. Ross, 973 So.2d 168 (La. App. 2d Cir. 2007), writ

denied, 983 So.2d 917 (La. 2008).  Petitioner now seeks federal habeas corpus relief on those

same two issues.  For the reasons that follow, it is recommended that the petition be denied.

### Sufficiency of the Evidence

Larshandra Davenport, the victim's sister, lived in a house on Lillian Street in

Shreveport with her four children, her friend Tawanna Jackson, and Tawanna's two-month-

old baby.  On the night of the shooting, two of Larshandra's children were not there, but

three young men and Jackie Morris (the victim) were present.  Jackie Morris (a/k/a Ray Ray) was Larshandra's brother and Tawanna's boyfriend of about a month. They were sitting around listening to the radio and drinking beer when Tawanna decided to call Petitioner (a/k/a Big O) to buy some Ecstasy pills.

Larshandra described Petitioner as her husband's sister's baby's daddy. She had known him for years and said he was like a brother to her. Tawanna also knew Petitioner and had obtained pills from him before. Petitioner arrived by car, and the two women went outside to meet him. Tawanna gave Petitioner $40 ($10 per pill) for four pills and went back inside.  Petitioner, when he saw how much money he had been given, yelled for someone to tell Tawanna to come back outside and bring his money.  Petitioner said that he had paid $15 for each of the pills, so needed another $20.

Tawanna came back outside to talk to Petitioner.  Larshandra went inside to take a phone call.  Jackie Morris went out on the porch and told Tawanna, who was speaking to Petitioner out in the yard, not to pay that much for the pills.  Morris said he could get them for less money in Ingleside.  Tawanna returned the pills to Petitioner, who gave her back her money.  Words were then exchanged between Petitioner and Morris along the lines of "What's up?", "What you gonna do?" and an invitation by Petitioner for Morris to step down in the yard.  Morris was 5'7" and weighed 150 pounds.  The witnesses described Petitioner, known as Big O, as being a much larger man.

One of Larshandra's children alerted her that the two men were getting into it.  She put down her phone and went to the front door, where she heard her brother say, "N*****,

f*** you."  Morris then turned around and pushed Larshandra hard enough to make her fall on the couch.  Larshandra heard, as her brother pushed her, a single gunshot, followed several seconds later by four or five more shots.  Adrian Crawford, who was at the house that night, testified that he heard Morris say, just before he turned around, "I'll be back." Crawford said he assumed Morris was going in the house to put on his shoes because he was standing on the porch shoeless and wearing SpongeBob SquarePants pajamas. A forensic pathologist testified that two 9 mm rounds entered the victim's back, killing him.

Christopher Williams (a/k/a Boo), another guest at the house, confronted Petitioner after Petitioner shot Morris. Williams was armed with a sawed-off 12 gauge shotgun and tried to shoot Petitioner, but the weapon jammed or failed.  That gave Petitioner the opportunity to get in his car and escape, although Williams did manage to fire two or three rounds at the car with the shotgun as Petitioner drove away.

The police investigation led to an address for the home of Athena Gibson, where Petitioner was believed to be hiding, and they obtained a warrant. They first attempted to telephone the occupants of the house and persuade them to come outside, but no one answered the phone. Similar requests over the P.A. system on a police car were also unsuccessful.  After tear gas was deployed, Petitioner's cousin exited the house.  Several officers eventually entered to clear the house and found Petitioner in a closed bathroom with a wet rag over his face. He resisted being taken into custody and argued with the officers. Three or four applications of a taser were required to get Petitioner in restraints.

The jury was charged with the elements of second degree murder, manslaughter, negligent homicide, and self-defense (justifiable homicide).  Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.  La. R.S. 14:30.1.  Manslaughter is a homicide that would be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  La. R.S. 14:31.  Sudden passion and heat of blood are not elements of manslaughter; rather they are mitigatory factors in the nature of a defense that the defendant bears the burden of proving by a preponderance of the evidence.  State v. Lombard, 486 So.2d 106, 110-11 (La. 1986). The jury returned a verdict of guilty of second degree murder.

Petitioner argues in his habeas petition that the evidence was not sufficient to support a conviction greater than manslaughter. He raised the same argument on direct appeal.  In evaluating the challenge "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

The state appellate court reviewed the evidence in detail, set forth the Jackson standard, and discussed whether any rational juror could have found the essential elements of second degree murder.  It was undisputed that Petitioner pointed a loaded pistol at Morris

and fired multiple shots, hitting Morris twice in the back as he was attempting to walk inside the house and away from Petitioner.  The words between the men began over a mere $20, which had been returned to Petitioner, and there was no evidence that the much smaller victim engaged in any threatening conduct toward Petitioner.  The court found that the jury's verdict survived review under the <u>Jackson</u> standard.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard. <u>Parker v. Matthews</u>,132 S.Ct. 2148, 2152 (2012).

The state court's adjudication of the <u>Jackson</u> claim was entirely reasonable based on the record.  The record speaks for itself.  There is simply no plausible argument that the state court's adjudication of the <u>Jackson</u> claim was an objectively unreasonable application of its holding.  There was ample evidence to support the second degree murder conviction and virtually no basis to argue for manslaughter.  No reasonable person in Petitioner's circumstances would have been overcome by sudden passion or heat of blood that would cause him to shoot an unarmed man in the back as he tried to walk away. The state court's

decision, viewed in light of the evidence submitted at trial, is not subject to being overturned on habeas review.

**Evidence Ruling**

Two 7.62 mm caliber rifles and various drugs were found inside the house where Petitioner was arrested.  The defense filed a motion in limine to exclude the evidence.  The State agreed to not present evidence of the drugs but argued that the rifles were relevant because Petitioner told police that he dropped the murder weapon (a pistol) that was never located.  The State argued that it was relevant that Petitioner would hide the murder weapon when he claimed self-defense, yet he did not hide the two rifles that were in the house.  The trial judge agreed with the State.  Tr. 597-99.  Police officer Chad Denham testified briefly that he was aware that "two assault rifles" were located in the house. Tr. 679.  Detective Jeff Brown testified that no handguns were found in the house but two rifles, "what I call assault rifles with extended, large capacity magazines," were found.  He said several magazines with ammunition were found, and one rifle was mounted with "a tactical scope on the top for what law enforcement and military would use for close-quarter battle."  He said there was no apparent effort made to hide the rifles.  Tr. 704-05. There was no evidence or suggestion that the rifles had anything to do with the shooting of Morris or were illegal to possess or, for that matter, that Petitioner owned the rifles or even knew they were in the house.

Petitioner argued on direct appeal that the trial court should not have admitted this evidence.  The state appellate court found that, given the State's failure to show the rifles were owned by Petitioner or even in his possession, there was minimal probative value in the

testimony concerning the rifles.  The court reasoned that there was some circumstantial indication that Petitioner owned the rifles or was aware of them and that his lack of effort to hide them could be probative of whether he acted in self-defense.  State v. Ross, 973 So.2d at 174-75.

Before seeking federal habeas relief, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), to give the state courts the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the state courts the necessary opportunity, the prisoner must "fairly present" his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim. Baldwin v. Reese, 124 S.Ct. 1347 (2004). The State argues that Petitioner did not fairly present and exhaust a federal claim with respect to the admission of the rifle evidence.

Petitioner was required to present his claim to the state court within a federal constitutional framework. Scott v. Hubert, 635 F.3d 659, 667 (5th Cir 2011). "[F]ederal courts sitting in habeas do not review state courts' application of state evidence law." Jones v. Cain, 600 F.3d 527, 536 (5th Cir. 2010); Castillo v. Johnson, 141 F.3d 218, 222 (5th Cir. 1998).  The determination of whether the claim was presented in such a fashion is made by looking to the briefs filed in state court. Smith v. Digmon, 98 S.Ct. 597 (1978); Soffar v. Dretke, 368 F.3d 441, 467 (5th Cir. 2004).

Petitioner's argument on this issue in his motion in limine (Tr. 275), oral argument at trial (Tr. 595-97), appellate brief (Tr. 810-12), and writ application (Tr. 863-66) was simply that the evidence lacked probative value and had an unduly prejudicial effect. There

was no argument the admission of the evidence violated any federal constitutional provision. Petitioner did not, therefore, exhaust a federal claim cognizable on habeas review in connection with the admission of the rifles evidence. See Baldwin, 124 S.Ct. at 1350-52 (claim in state court petition for ineffective assistance of appellate counsel not exhausted because not identified as federal in nature).

Assuming there was exhaustion of a federal claim – which finds no support in the record – the Due Process Clause does provide a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).  The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict. Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

It is difficult to follow the logic of the prosecutor and the state courts that the presence of the rifles in the house, despite the lack of evidence they were connected to Petitioner or the charged crime, somehow undermined Petitioner's claim of self-defense.  But even if it is assumed the state courts ran afoul of their own rules, such as La. C.E. arts. 401-403, the evidence was not so unduly prejudicial as to have had a substantial and injurious effect or influence on the verdict. The testimony about the rifles was insignificant in comparison to the detailed testimony of several eyewitnesses about the events at the scene of the shooting. There was no reasonable verdict other than guilty of second degree murder.  Considering the

record in its entirety, there is no basis to vacate the murder conviction on habeas review due to the admission of the testimony about the rifles.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied** and **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules

Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 8th day of March, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE